**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAYMOND TIMOTHY FRANK,

            Petitioner,

  v.

FRANK X. CHAVEZ, Warden,

            Respondent.

_____/

No. C 11-5204 YGR (PR)

**ORDER DENYING WITHOUT PREJUDICE RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY; DENYING WITHOUT PREJUDICE PETITIONER'S MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE; AND SETTING BRIEFING SCHEDULE**

(Docket Nos. 2, 6)

## INTRODUCTION

      Petitioner Raymond Timothy Frank, an inmate at the Sierra Conservation Center in Jamestown, filed a *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Instant Petition" or "Pet."). Before the Court is Respondent's motion to dismiss ("MTD") the Instant Petition as untimely under 28 U.S.C. § 2244(d) -- the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In the alternative, Respondent argues that the petition is procedurally barred by the state courts' findings that Petitioner's state petitions were untimely under state law.

      Also before the Court is Petitioner's "Application to File Brief of Amicus Curiae of Physicians and Bio-Scientists On Behalf of Petitioner Raymond Frank," which will be construed as a motion for leave to file a brief of amicus curiae.

      Having considered the parties' filings, and good cause appearing, the Court DENIES without prejudice Respondent's motion to dismiss the petition and DENIES without prejudice Petitioner's motion for leave to file a brief of amicus curiae.

## BACKGROUND

      On October 15, 2003, Petitioner was convicted by a Contra Costa County jury of two counts of corporal injury of a child (Cal. Penal Code § 273d(a)) and one count of assault causing the death of a child under the age of eight (Cal. Penal Code § 273ab), with one strike and prior serious felony conviction. (MTD, Ex. A at 1, 7.) He was sentenced to sixty years and four months in prison. (*Id.*)

The judgment was affirmed by the California Court of Appeal on May 10, 2007. (*Id.*, Ex. A.) The California Supreme Court denied review on July 18, 2007. (*Id.*, Ex. B.) The judgment became final on October 16, 2007. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final ninety days after the California Supreme Court denied review).

On October 14, 2008, Petitioner signed a petition for writ of habeas corpus filed in the Contra Costa County Superior Court on October 20, 2008. (*Id.*, Ex. C.) The state superior court denied the petition on December 16, 2008, finding, *inter alia*, that was untimely. (*Id.*)

Simultaneously, Petitioner filed his first federal habeas petition ("First Petition") on October 14, 2008.[1] (Docket No. 1, Case No. C 08-04835 MMC (PR).) However, Petitioner did not pay the $5.00 filing fee at the time he filed his First Petition. Therefore, on October 22, 2008, the Clerk send him notice informing him that his action could not go forward until he paid the filing fee or filed a completed prisoner's *in forma pauperis* (IFP) application. (Docket No. 4; Case No. C 08-04835 MMC (PR).) The Clerk sent Petitioner a blank IFP application and told him that he must pay the fee or return the completed application within thirty days -- or by November 21, 2008 -- or his action would be dismissed. In an Order dated December 4, 2008, his First Petition was dismissed without prejudice because Petitioner failed to complete his IFP application or to pay the requisite $5.00 filing fee. (Docket No. 5, Case No. C 08-04835 MMC (PR).)

On December 17, 2008, Petitioner filed a motion to set aside the dismissal and to extend the filing fee deadline because he claimed he acted diligently to attempt to pay his filing fee in a timely manner. (Docket No. 7, Case No. C 08-04835 MMC (PR).) On December 30, 2008, the Court received Petitioner's $5.00 filing fee. In an Order dated July 10, 2009, the Court denied Petitioner's

---

[1] A *pro se* federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir. 2001), *vacated and remanded on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). The first petition was signed on October 14, 2008 and the instant petition was signed on October 14, 2011, which are the earliest dates that those petitions could have been delivered to prison authorities for mailing. For the purposes of this discussion, the Court deems that the petitions were filed on those dates.

motion to set aside the dismissal and to extend the filing fee deadline holding that "if the case were reopened the Court would be required to dismiss the action because the claims raised in the petition are unexhausted." (Docket No. 8, Case No. C 08-04835 MMC (PR).)  The Court directed Petitioner to "file a new federal habeas petition once he has exhausted his state remedies." (*Id.*)  The Court closed the case.

Meanwhile, on February 23, 2009, Petitioner filed a state habeas petition in the California Court of Appeal. (*Id.*, Ex. D.)  The state appellate court denied the petition on February 26, 2009. (*Id.*)  On June 10, 2009, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (*Id.*, Ex. E.)  The state supreme court denied the petition on October 28, 2009. (*Id.*, Ex. E.)

Thereafter, on February 16, 2010, Petitioner filed the following documents in the case for his First Petition: (i) a twenty-seven-page document entitled, "Application to File Brief of Amicus Curiae of Physicians and Bio-scientists on Behalf of Petitioner Raymond Frank" ("Amicus Application") (Docket No. 9, Case No. C 08-04835 MMC (PR)) and (ii) an eighty-six page document along with twenty-nine pages of exhibits, which was docketed as a "Brief re 9 Application" on the Court's electronic filing system referring to the aforementioned Amicus Application.  However, upon closer examination, the eighty-six page document is actually labeled, "Petition for a Writ of Habeas Corpus." (Docket No. 10, Case No. C 08-04835 MMC (PR).)  Thus, it appears that Petitioner had attempted to file another federal habeas petition in this Court on February 16, 2010 (it was signed on January 27, 2010) in Case No. C 08-04835 MMC (PR), the same case in which he had filed his First Petition.  Because that case had been closed and no motion to reopen the case had been filed, the Court did not review the aforementioned filings.

More than a year went by before Petitioner filed a letter requesting the status of his case on March 22, 2011. (Docket No. 11, Case No. C 08-04835 MMC (PR).)  On July 13, 2011, Petitioner filed a motion requesting permission to refile a petition for a writ of habeas corpus. (Docket No. 12, Case No. C 08-04835 MMC (PR).)  In an Order dated July 21, 2011, the Court denied Petitioner's motion, which was construed as a motion to reopen the action, and instructed Petitioner that he could not refile his petition but must file a new federal habeas petition without referencing his past case

number.  (Docket No. 13, Case No. C 08-04835 MMC (PR).)

In a letter signed September 30, 2011 and filed on October 6, 2011, Petitioner asked for some of the original copies of his filings.  (Docket No. 15, Case No. C 08-04835 MMC (PR).)

On October 14, 2011,[2] Petitioner filed the instant federal petition for a writ of habeas corpus. (Docket No. 1.)  On October 25, 2011, Petitioner filed his motion for leave to file a brief of amicus curiae.  (Docket No. 2.)

Respondent filed his motion to dismiss the petition as untimely and procedurally barred on January 27, 2012.  (Docket No. 6.)  Petitioner filed his opposition ("Opp'n") on March 28, 2012. (Docket No. 11.)  Respondent filed his reply ("Reply") to Petitioner's opposition on April 4, 2012. (Docket No. 12.)

## **DISCUSSION**

AEDPA, which became law on April 24, 1996, imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1).

The one-year limitations period may start running from "the expiration of the time for seeking [direct] review."  28 U.S.C. § 2244(d)(1)(A).  "Direct review" also includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition.  *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).  Accordingly, if a petitioner fails to seek a writ of certiorari from the United

---

[2] *See supra* footnote 1.

United States District Court

For the Northern District of California

States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires. *See Miranda*, 292 F.3d at 1065; *Bowen*, 188 F.3d at 1159.

The one-year period is calculated according to the general rule for counting time in federal courts, Rule 6(a) of the Federal Rules of Civil Procedure. *Patterson v. Stewart,* 251 F.3d 1243, 1246 (9th Cir. 2001). That is, "the day of the act, event, or default from which the designated period of time begins to run shall not be included" in the one-year limitations period. Fed. R. Civ. P. 6(a). This is referred to as the "anniversary method" because, absent any tolling, the expiration date of the limitations period will be the same date as the triggering event in the following year. *Patterson*, 251 F.3d at 1246.

Here, the California Supreme Court denied Petitioner's appeal on July 18, 2007. Therefore, the judgment became final ninety days later -- on  October 16, 2007 -- when the time to file a petition for writ of certiorari in the Supreme Court expired. Accordingly, Petitioner was required to file his federal habeas petition no later than October 16, 2008. *See* 28 U.S.C. § 2244(d). Because he did not file the Instant Petition until October 14, 2011-- almost three years after the limitations period had expired -- his petition is untimely unless he can show that he is entitled to statutory or equitable tolling.

**I.**   **Statutory Tolling**

The petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "'time during which a properly filed application for State post-conviction or other collateral review [with respect to the pertinent judgment or claim] is pending.'" *Dictado v. Ducharme*, 244 F.3d 724, 726 (9th Cir. 2001) (quoting 28 U.S.C. § 2244 (d)(2)), *abrogated on other grounds by Pace v. DiGuglielmo,* 544 U.S. 408 (2005).  The limitations period is also tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). In California, where prisoners generally use the State's original writ system, this means that the limitations period remains tolled during the intervals

United States District Court

For the Northern District of California

1

2

3

4

between a state court's disposition of an original state habeas petition and the filing of the next original state habeas petition in a higher court, provided the prisoner did not delay unreasonably in seeking review in the higher court. *Id*. at 220-25.

5

6

7

8

9

10

11

12

13

14

15

As mentioned above, the limitations period started to run on October 16, 2007.  Petitioner filed his first state habeas petition in the Contra Costa County Superior Court 363 days later, on October 14, 2008, which is **two days** (365 minus 363 days) before the one-year limitations period ended.  Pursuant to *Carey*, Petitioner is entitled to statutory tolling of the limitations period for the entire time he was pursuing state collateral relief.  Thus, the limitations period (which only had two days remaining) resumed running on October 28, 2009 (the date the California Supreme Court's denial of Petitioner's state habeas petition was final).  The Instant Petition was deemed filed on October 14, 2011, 716 days after October 28, 2009.  Therefore, a total of 1,079 days (363 days plus 716 days) elapsed before Petitioner filed the Instant Petition.  The Court therefore finds that the Instant Petition is untimely because the one-year limitations period had expired before Petitioner filed it.[3]

16

17

18

Because Petitioner did not meet the one-year requirement for filing the Instant Petition -- and statutory tolling does not save his petition -- his petition is barred as untimely under 28 U.S.C. § 2244(d)(1), unless he can show that he is entitled to equitable tolling of the limitations period.

19

## II.    Equitable Tolling

20

21

22

23

The Supreme Court has determined that AEDPA's statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).  "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

24

25

26

27

28

[3] Respondent argues that Petitioner's state superior court habeas petition was not "properly filed" for the purposes of 28 U.S.C. § 2244(d)(2) because it was denied on the ground that it was untimely.  (MTD at 3.)  In addition, Respondent argues that the 104-day gap between the state appellate court's denial and Petitioner's filing of his state supreme court habeas petition should not be tolled because it amounted to "unreasonable delay."  However, the Court need not address these arguments because, as mentioned above, even assuming arguendo that Petitioner were entitled to *full* statutory tolling for an entire round of state habeas filings, it would not save his petition.

claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling will not be available in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288. The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). Another statement of the standard is that a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

The Ninth Circuit has said that the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Indeed, "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Id.* at 1066 (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

Petitioner in his opposition claims that he is "entitled to Equitable Tolling because [he] pursued his claims diligently and faced extraordinary circumstances . . . which prevented filing at an earlier time." (Opp'n at 1.) Specifically, he claims that he is entitled to equitable tolling due to lockdowns at the prison from August 27, 2007 to November 14, 2007. Petitioner also claims that he is entitled to equitable tolling from the filing of his First Petition on October 14, 2008 to the filing of the Instant Petition on October 14, 2011.[4]

---

[4] The Court need not address whether Petitioner may be granted equitable tolling from July 18, 2007 until August 28, 2007, because his "appellate counsel . . . waited one and a half months after" the California Supreme Court's denial of Petitioner's appeal on direct review to notify Petitioner of the state supreme court's denial. (Opp'n at 7.) Petitioner's judgment became final on October 16, 2007, ninety days after the July 18, 2007 denial of his direct appeal. Petitioner is not entitled to tolling during the ninety days between the state supreme court's denial of his appeal and the finality of the judgment because the limitations period had not started at that point in order to allow for the ninety-day period during which he could have filed of a writ of certiorari with the United States Supreme Court.

7

**A.      Lockdowns - August 27, 2007 to November 14, 2007**

Petitioner asks that the time from August 27, 2007 to November 14, 2007 be equitably tolled. (*Id.* at 8.) Petitioner claims that he was placed in lockdown on Aug. 27, 2007 and thereafter did "not have access to the law library" and all of his requests for his legal files "[were] denied each and every time." (*Id.* at 9.) He claims that "these obstacles prevented [him] from identifying what constitutional violations occurred; researching the legal theories in support of those violations; [and] drafting a petition to properly present the claims to the Court." (Opp'n at 10.) Petitioner claims that "finally on Nov. 14th, [2007] . . . [he] was given access to his legal files and access to the law library." (*Id.*)

In the instant case, the limitations period did not begin until October 16, 2007. Therefore, no basis exists for tolling from August 27, 2007 to October 15, 2007.

With respect to the remaining twenty-nine days (October 16, 2007 to November 14, 2007), it is conceivable that equitable tolling might be warranted because Petitioner was prevented from preparing a timely petition due to his lack of access to his legal files and to the prison law library. Respondent did not fully address this issue in his reply to Petitioner's opposition. Respondent merely states:

> Here, petitioner asserts he was without his legal files while he was in administrative segregation. Even assuming, arguendo, he was without such materials, such fact does not per se entitle him to tolling. Petitioner, must, but makes no attempt to, allege with specificity how the alleged lack of materials prevented him from a timely filing. *See Helton v. Secretary for the Dep't of Corrs.*, 259 F.3d 1310, 1314 (11th Cir. 2001) (per curiam); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).

(Reply at 3.) Such an argument is conclusory, and Respondent fails to address Petitioner's claim that his lack of access to his legal files or to the prison law library prevented him from filing a timely petition. Petitioner pleads with specificity enough facts, and documentation to show a causal connection between the lockdowns and his inability to file a timely federal habeas petition. (*Id.*, Ex. J, I, L.) Accepting the pleadings as true, Petitioner could demonstrate that he was subjected to extraordinary circumstances in prison if the Court determines that he exerted "reasonable diligence" in attempting to file his timely federal habeas petition, *Holland*, 130 S. Ct. at 2565, and that he was

8

United States District Court

For the Northern District of California

prevented from moving along the process of filing his federal habeas. Respondent has failed to submit evidence countering Petitioner's claim of lockdowns during the relevant time period and failed to refute Petitioner's allegations that he was denied access to his legal materials and to the law library during that time. Because Respondent has not fully addressed whether Petitioner is entitled to equitable tolling based on his lack of access to his legal materials and his limited access to the law library, Respondent's motion to dismiss is denied without prejudice to renewing the motion and addressing this equitable tolling issue.

**B.**     **Effect of Dismissal of First Petition - October 14, 2008 to October 14, 2011**

Petitioner argues that his First Petition filed in Case No. C 08-4835 MMC (PR) was "*properly* filed, signed and delivered to prison authorities for mailing on October 14, 2008,[5] "with two days remaining in the limitations period." (Opp'n at 3 (emphasis in original).) Petitioner claims that the First Petition "was dismissed due to 'extraordinary circumstances' beyond [his] control." (*Id.*) Thus, Petitioner claims he is entitled to equitable tolling from the date he filed his First Petition on October 14, 2008 until October 14, 2011, the date he filed the Instant Petition. Alternatively, an argument could also be made that Petitioner is entitled to equitable tolling until July 21, 2011, when the Court denied his motion to reopen the first action, and instructed Petitioner that he must file a new federal habeas petition without referencing his past case number. This instruction resulted from Petitioner's filing of a subsequent federal habeas petition on January 27, 2010 in the same case as the First Petition which had been closed. Incidentally, Petitioner also claims that he is "entitled to equitable tolling for the period between Jan. 27th, 10 and Oct. 14th, 11 -- the period of time which (*clerk's unjustified rejection of petition justified partial tolling*)." (Opp'n at 9 (emphasis in original.)

As mentioned above, in its December 4, 2008 order of dismissal (Docket No. 5, Case No.

---

[5] Respondent uses the filing date, October 22, 2008, as the date the first petition was deemed filed. However, Respondent did not apply the mailbox rule, which as mentioned above, allows for the petition to be deemed filed on the date the prisoner submits it to prison authorities for filing -- which was on October 14, 2008 -- rather than on October 22, 2008, the date it was received by the Court. *See Carey*, 536 U.S. at 214.

**United States District Court**

For the Northern District of California

1

2  C 08-04835 MMC (PR)), the Court dismissed Petitioner's First Petition without prejudice for failure

3  to pay the filing fee.  Petitioner argues that his petition was dismissed erroneously.  In support of his

4  argument, Petitioner attaches his "Trust Account Withdrawal Order," which indicates that he

5  requested a withdrawal of $5.00 from his trust account on November 6, 2008 to pay the filing fee

6  before the November 21, 2008 due date.  (Opp'n, Ex. A.)  Petitioner has also attached a

7  memorandum from the account representative at the prison where he was incarcerated indicating that

8  there was a "delayed delivery of the new check stock associated with conversion from the Inmate

9  Trust Accounting System to the new Trust Restitution Accounting Canteen System."  (*Id.*)

10         In its July 10, 2009 Order denying Petitioner's motion to set aside order of dismissal and to

11  extend time to pay filing fee, the Court stated:

12              Petitioner's motion will be denied in view of the fact that if the case were
       reopened the Court would be required to dismiss the action because the claims
13       raised in the petition are unexhausted.

14              Prisoners in state custody who wish to challenge collaterally in federal
       habeas proceedings either the fact or length of their confinement are first required
15       to exhaust state judicial remedies, either on direct appeal or through collateral
       proceedings, by presenting the highest state court available with a fair opportunity
16       to rule on the merits of each and every claim they seek to raise in federal court.  *See*
       28 U.S.C. § 2254(b)-(c), *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982).  The
17       exhaustion requirement is not satisfied if there is a pending post-conviction
       proceeding in state court.  *See Sherwood v. Tomkins*, 716 F.2d 632, 634 (9th Cir.
18       1983).

19  (July 10, 2009 Order at 1-2 in Case No. C 08-04835 MMC (PR).)

20         Upon closer review, the Court finds that it inadvertently determined that all of Petitioner's

21  federal habeas claims in his First Petition were unexhausted even though four of his claims were

22  actually exhausted on direct review.  Petitioner's claims 8-11 from his First Petition, include the

23  following: (1) "The trial court erred in admitting evidence of Appellant's objections to a police

24  search of his home"; (2) "The trial court should have given an unanimity instruction on the count of

25  assault causing death"; (3) "Juror #6 should not have been discharged during deliberations"; and

26  (4) "[His] [s]entence of twenty-five yrs to life for [section] 273ab is cruel and unusual punishment."

27  (First Petition at 35-36 in Case No. C 08-04835 MMC (PR).)  These claims were all denied on direct

28  appeal by the state appellate court.  (MTD, Ex. A.)  In his First Petition, Petitioner admits that claims

10

1-7 "were not raised because [his appellate attorney] prepared a grossly exigous [sic] opening brief without ever consulting appellant."  (First Petition at 36 in Case No. C 08-04835 MMC (PR).) Therefore, Petitioner's First Petition had both exhausted and unexhausted claims, making it a mixed petition. The Court should have informed Petitioner that he had a mixed petition rather than determining that his entire petition was unexhausted.

When faced with a post-AEDPA mixed petition, the district court must *sua sponte* inform the habeas petitioner of the mixed petition deficiency and provide him an opportunity to amend the mixed petition by striking unexhausted claims as an alternative to suffering dismissal before the court may dismiss the petition.  *Jefferson v. Budge*, 419 F.3d 1013, 1016 (9th Cir. 2005) (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)) (court's erroneous dismissal of mixed petition entitled petitioner to equitable tolling of one-year AEDPA statute of limitations from the date the first habeas petition was dismissed until the date the second habeas petition was filed); *Hunt v. Pliler*, 384 F.3d 1118, 1125 (9th Cir. 2004) (court's imposition of sanction of dismissal with prejudice for failure to prosecute and obey court orders was abuse of discretion where petitioner filed request that third amended petition be held in abeyance until district court ruled on magistrate's finding that first petition contained unexhausted claims).

The district courts retain the same degree of discretion they had before *Rhines* to implement the three-step procedure outlined in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007), particularly when "'outright dismissal [of an entire mixed petition would] render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA].'" *King v. Ryan*, 564 F.3d 1133, 1141-42 (9th Cir. 2009) (citing *Kelly*, 315 F.3d at 1070).  "Pursuant to the *Kelly* procedure, (1) a petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition."  *Id.* at 1134

United States District Court

For the Northern District of California

(citing *Kelly*, 315 F.3d at 1070-71).  A petitioner seeking to avail himself of the *Kelly* three-step procedure is not required to show good cause, as under *Rhines*, but rather must show that the amendment of any newly exhausted claims back into the petition satisfies both *Mayle v. Felix*, 545 U.S. 644, 655 (2005), by sharing a "common core of operative facts" and *Duncan v. Walker*, 533 U.S. 167 (2001), by complying with the statute of limitations.  *King*, 564 F.3d at 1141-43 (finding district court's dismissal of unexhausted claims was improper because petitioner was not required to show good cause to avail himself of the *Kelly* three-part procedure but affirming the dismissal as harmless because the unexhausted claims did not relate back to the claims in the original petition that were fully exhausted at the time of filing).

A district court is not obliged to act as counsel or paralegal to *pro se* litigants.  *Pliler v. Ford*, 542 U.S. 225, 231(2004).  The Supreme Court has therefore disapproved the Ninth Circuit's former requirement that if a *pro se* prisoner files a mixed petition, the district court must warn him (1) that it would not have the power to consider a motion for a stay unless he first opted to amend to delete the unexhausted claims; and (2) if applicable, that his claims would be time barred, absent cause for equitable tolling, upon his return to federal court if he opted to dismiss the petition without prejudice and return to state court to exhaust all his claims.  *Id.* at 231-33 *rev'g Ford v. Hubbard*, 330 F.3d 1086 (2003).[6]

The Ninth Circuit's requirement that a district court inform a petitioner who files a mixed petition that he may withdraw the unexhausted claims as an alternative to dismissal is unaffected by *Pliler* and remains intact.  *Jefferson v. Budge*, 419 F.3d 1013, 1016 (9th Cir. 2005) (citing *Rhines*, 544 U.S. at 277-78; *Smith v. Ratelle*, 323 F.3d 813, 818-19 (9th Cir. 2003)).  However, *Pliler* makes clear that district courts are not required to consider *sua sponte* the stay-and-abeyance procedures.

---

[6] On remand from the Supreme Court in *Pliler*, the Ninth Circuit rejected its prior holding that the district court was required to advise the petitioner of the option of staying his exhausted claims pending exhaustion of his unexhausted claims, and adhered to its prior holdings -- the court's failure to comply with the procedure governing designation of magistrate judges and the court's abuse of its discretion in dismissing the petition with prejudice -- in vacating the district court's dismissal of the habeas petition.  *See Hunt*, 384 F.3d at 1120.

*Robbins*, 481 F.3d at 1148[7]; *see also Ford v. Pliler*, 590 F.3d 782, 786-89 (9th Cir. 2009) (reversing district court's decision that petitioner was entitled to equitable tolling; district court did not affirmatively mislead petitioner when it accurately explained his procedural options regarding his two mixed petitions even though the court did not advise him of the likely consequences of his options); *Brambles v. Duncan*, 412 F.3d 1066, 1069-71 (9th Cir. 2005) (district court's instructions to petitioner to choose between two alternatives -- dismiss his unexhausted claims and proceed in federal court only with his then-exhausted claim, or request the district court to dismiss the entire petition without prejudice and exhaust his then-unexhausted claims in state court before returning to federal court -- were not affirmatively misleading under *Pliler*; district court was not required to advise petitioner that the dismissal of his first petition would effectively be final unless he could establish that the statute of limitations period was equitably tolled, and that the stay and abey process was available).

Here, because the Court has determined that Petitioner's First Petition was a mixed petition and that it incorrectly determined that the First Petition was unexhausted, there remains a question of whether this error entitles Petitioner to equitable tolling of the limitations from the date the First Petition was improperly dismissed until the date the Instant Petition was filed. *See Rhines*, 544 U.S. at 277. The parties did not raise this issue in any of their briefs. In addition, if Petitioner seeks to avail himself of the *Kelly* three-step procedure outlined above, he must show that the unexhausted claims relate back to the claims in the First Petition that were fully exhausted at the time of filing. *King*, 564 F.3d at 1141-43.

Equitable tolling is required where the district court's erroneous dismissal of a prisoner's prior mixed petition, rather than the prisoner's lack of diligence, accounts for a failure to file a timely petition. *See Jefferson*, 419 F.3d at 1017 (9th Cir. 2005) (stating that the "erroneous dismissal" of a mixed habeas petition is sufficiently extraordinary that it justifies equitable tolling from the date the

---

[7] To the extent that *Kelly* and its progeny suggest otherwise, those cases are overruled. *Robbins*, 481 F.3d at 1149.

13

first habeas petition was dismissed until the date the second habeas petition was filed); *Smith*, 323 F.3d at 820-24 (finding equitable tolling warranted where district court dismissed prior timely mixed petition without providing opportunity to delete unexhausted claims and gave misleading information that failed to inform petitioner that any new petition would be untimely).

The prisoner must demonstrate reasonable diligence to get the benefit of equitable tolling in these circumstances. *See Kelly*, 315 F.3d at 1071 (indicating that thirty days is sufficient time for a petitioner to return to federal court following final action by the state courts); *cf. Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (finding that petitioner was not reasonably diligent where he waited twenty-seven months to present unexhausted claims to California Supreme Court and seven months after that court's decision to return to federal court).

Here, Petitioner could argue that he acted diligently in trying to revive his First Petition after it was dismissed.  The record shows that he filed two motions to reopen the case.  He also attempted to exhaust state remedies as he was directed and attempted to file a new petition on January 27, 2010, after exhausting state remedies.  Again, the Court notes that the January 27, 2010 petition was filed in a closed case, Case No. C 08-4835 MMC (PR), and incorrectly docketed as a "Brief re 9 Application," referring to docket no. 9 in that case, his attached Amicus Application.  The record shows that there was a year delay before Petitioner checked on the status of the January 27, 2010 petition, which he apparently thought he properly filed.  While Petitioner eventually filed a motion requesting permission to refile his petition, the record shows this motion was filed on July 13, 2011 -- almost a year and a half after he filed the January 27, 2010 petition.  Furthermore, the Court denied Petitioner motion to refile his petition, which was construed as a motion to reopen the action, on July 21, 2011.  In is July 21, 2011 Order, the Court instructed Petitioner to refile his petition as a new federal habeas petition without referencing his past case number, and further stated: "A copy of the Court's form petition along with instructions for completing it are provided to petitioner herewith; the space for the civil case number should be left blank and the Clerk of Court will assign a new case number to the petition."  (July 21, 2011 Order in Case No. C 08-4835 MMC (PR).)  Petitioner then

waited three more months before filing the Instant Petition in the present case on October 14, 2011.

As mentioned above, because Petitioner could benefit from equitable tolling based on the improper dismissal of a mixed petition and the parties have not fully addressed this, Respondent's motion to dismiss is denied without prejudice to renewing the motion and addressing this equitable tolling issue.  In addition, Respondent must also address Petitioner's argument that he is entitled to tolling for the entire time period between the filing of each federal petitions -- from October 14, 2008 through October 14, 2011.  Petitioner also argues that he is entitled to equitable tolling from the time he filed the January 17, 2010 petition to the date he filed the Instant Petition, October 14, 2011.  Finally, because Petitioner was expressly informed that he needed to file a new federal petition in the Court's July 13, 2011 Order in Case No. C 08-4835 MMC (PR), the parties need to submit briefing as to whether Petitioner is entitled to equitable tolling during the three-month period -- between July 13, 2011 and October 14, 2011 -- that he waited to file the Instant Petition.

**III.    Actual Innocence Exception and Motion for Leave to File Brief of Amicus Curiae**

In his opposition, Petitioner claims that all of his claims should be heard on the merits because he is actually innocent.  (Opp'n at 14-16.)  In support of his claim, Petitioner has filed a document entitled, "Application to File Brief of Amicus Curiae of Physicians and Bio-Scientists On Behalf of Petitioner Raymond Frank" filed by Lisa A. Rasmussen, Esq.  (Docket No. 2.)  As mentioned above, the Court construes this application as a motion for leave to file a brief of amicus curiae.

Respondent argues that the amicus brief is "not *petitioner's* brief at all."  (Reply at 5.)  Respondent submits a declaration from his counsel, Deputy Attorney General Gregory A. Ott, stating that Attorney Ott contacted Attorney Rasmussen.  (Declaration of Gregory Ott, Reply, Ex 1 ("Ott Decl.") ¶ 3.)  Attorney Ott confirmed that Attorney Rasmussen was not representing Petitioner, nor had she filed an amicus brief in the instant case or "authorized or endorsed such use" of her amicus brief.  (*Id.* ¶¶ 4, 5, 6.)  Attorney Rasmussen informed Attorney Ott that "she had filed a brief resembling [his] description of the Amicus Brief in approximately 2000, in *People v. Basuta*, 94 Cal.

United States District Court

For the Northern District of California

1   App. 4th 370 (2001), a direct appeal case involving shaken baby syndrome." (*Id.* ¶ 5.)  Thus,

2   Respondent argues that the amicus brief "cannot be considered a proffer of evidence, as petitioner

3   has no connection to the medical professionals identified in the brief, and they, no connection to

4   petitioner's case." (Reply at 5.)

5

6        Claims which challenge the constitutionality of the length of a sentence are subject to review

7   at any time under the standard of review which allows a federal court to hear the merits of

8   successive, abusive or procedurally defaulted claims if the failure to hear the claims would constitute

9   a miscarriage of justice. *See Sawyer v. Whitley*, 505 U.S. 333, 330-40 (1992).  Under the traditional

10  understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence

11  is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. 527, 543-44 (1986).

12  However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who

13  can show that "a constitutional violation has probably resulted in the conviction of one who is

14  actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see, e.g., Wildman v. Johnson*, 261

15  F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that a

16  fundamental miscarriage of justice would result from application of procedural default).  Under this

17  exception, a petitioner may establish a procedural "gateway" permitting review of claims which

18  otherwise would be barred from federal review if he demonstrates "actual innocence." *Schlup*, 513

19  U.S. at 316 & n.32.

20       As mentioned above, a credible showing of "actual innocence" under *Schlup*, excuses the

21  statute of limitations period established by AEDPA. *Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir.

22  2011).  Under this "equitable exception," a petitioner "may pass through the *Schlup* gateway and

23  have his otherwise time-barred claims heard on the merits." *Id.*  In order to pass through the *Schlup*

24  gateway, a petitioner must produce sufficient proof of his actual innocence to bring him "within the

25  'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup*, 513 U.S. at

26  315 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).  The evidence of innocence must be "so

27  strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied

28

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that the trial was free of nonharmless constitutional error." *Id.* at 316.  A petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  *Id.* at 327.  This exacting standard "permits review only in the 'extraordinary' case," but it "does not require absolute certainty about the petitioner's guilt or innocence."  *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327).

A petitioner must support his claims "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324.  "By enumerating [these] categories of evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of evidence cannot support an actual innocence claim."  *Lee*, 653 F.3d at 945-46 (Kozinski, J. concurring).  A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory," admissible at trial or not.  *House*, 547 U.S. at 538 (internal quotation marks removed).  On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do."  *Id.* (quoting *Schlup*, 513 U.S. at 329).  The court is to "assess how reasonable jurors would react to the overall, newly supplemented record."  *Id.*  In sum, a petitioner must show that it is more likely than not that "no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Stated another way, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him."  *Lee*, 653 F.3d at 946 (citing *Schlup*, 513 U.S. at 327) (Kozinski, J. concurring).

The actual innocence exception applies only if the petitioner presents evidence which creates a colorable claim of actual innocence, that is, that the petitioner is factually innocent of the charge for which he is incarcerated as opposed to legally innocent as a result of legal error.  *See Schlup*, 513 U.S. at 321; *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (actual innocence means factual innocence, not merely legal insufficiency).

Here, Petitioner's conclusory allegation that he is "actually innocent" could possibly fall short of establishing that the exception applies to him.  As mentioned above, the actual innocence exception applies only if the petitioner presents evidence which creates a colorable claim of actual

17

innocence, that is, that the petitioner is factually innocent of the charge for which he is incarcerated as opposed to legally innocent as a result of legal error.  *Schlup*, 513 U.S. at 321; *see Bousley,* 523 U.S. at 623-24.  Petitioner submits an amicus brief from an unrelated case without explaining how that principles discussed in that brief could have any bearing on, or could result in an acquittal in, his own case.  Without the brief, Petitioner offers no "new reliable evidence" to show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.  At this time, however, the Court will be denying Respondent's motion to dismiss without prejudice; therefore, it need not decide whether Petitioner's claim of "actual innocence" excuses his untimeliness.  However, if Respondent renews his motion to dismiss, and Petitioner wishes to raise this actual innocence exception, Petitioner must address the deficiencies outlined above.  In addition, because Petitioner has not explained how the filing of an unrelated amicus brief is related to his claim of actual innocence or to his petition as a whole, the Court DENIES his motion for leave to file a brief of amicus curiae without prejudice to renewing the motion upon curing the deficiencies outlined above.

**IV.    Summary**

In sum, the Court finds that Respondent has not addressed whether Petitioner is entitled to equitable tolling based the issues addressed above.  Accordingly, the Court DENIES Respondent's motion to dismiss without prejudice to renewing the motion and addressing the aforementioned equitable tolling issues raised in Petitioner's opposition.  Specifically, if Respondent chooses to renew the motion to dismiss, he shall address the following: (1) whether Petitioner is entitled to equitable tolling based on his lack of access to his legal materials and his limited access to the law library due to lockdowns during the relevant time period from October 16, 2007 to November 14, 2007; and (2) whether Petitioner is entitled to equitable tolling based on the improper dismissal of a mixed petition and whether the unexhausted claims relate back to the claims in the original petition that were fully exhausted at the time of filing -- in particular addressing whether Petitioner showed reasonable diligence to be eligible for equitable tolling during the following time frames:  (a) the three-year period between the filing of his two docketed federal habeas petitions, from October 14,

18

United States District Court

For the Northern District of California

2008 to October 14, 2011; (b) the twenty-one month period from the filing of his January 17, 2010 petition to the filing of the Instant Petition on October 14, 2011; and (c) the three-month period between the July 13, 2011 Order denying his motion to reopen in Case No. C 08-4835 MMC (PR) and the filing of the Instant Petition on October 14, 2011.  If Respondent renews his motion to dismiss, and Petitioner wishes to raise his actual innocence exception and renew his motion for leave to file a brief of amicus curiae, he must address the deficiencies outlined above.  Specifically, Petitioner must address how filing an amicus brief from an unrelated case could have any bearing on, or could result in an acquittal in, his own case by specifically outlining the relevance of the principles discussed in that brief.  Moreover, Petitioner cannot make conclusory arguments in support of his claim of actual innocence.  Instead, as mentioned above, he needs to present "new reliable evidence" to show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.

Because the Court is denying Respondent's motion without prejudice, it chooses not address the alternative argument that Petitioner's claims 1-7 are procedurally barred at this time.[8]  If, upon renewing their motion to dismiss the petition as untimely, Respondent chooses also to raise their alternative argument involving procedural default again then the Court will address both issues at that time.

### CONCLUSION

For the foregoing reasons,

1.  Respondent's motion to dismiss the petition as untimely (Docket No. 6) is DENIED without prejudice to renewing the motion and addressing the equitable tolling issues set forth above no later that **sixty-three (63) days** of the date of this Order.  If Respondent chooses to file a renewed motion, Petitioner shall file an opposition -- and he may raise his actual innocence exception issues upon addressing the deficiencies outlined above -- no later than **twenty-eight (28) days** of his

---

[8] As explained above, neither party has acknowledged that the instant petition is a "mixed petition."  Respondent does not clarify that the claims presented on collateral review only involved claims 1-7 because claims 8-11 were presented on direct review.

**United States District Court**
For the Northern District of California

receipt of the renewed motion. Respondent shall file with the Court and serve on Petitioner a reply no later than **fourteen (14) days** of receipt of any opposition.

2. Should Respondent fail to file a renewed motion to dismiss within the sixty-day time frame, Respondent is directed to SHOW CAUSE why the petition should not be granted. Respondent shall file with this Court and serve upon Petitioner, no later than **sixty-three (63) days** of the date of this Order, an Answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be issued. Respondent shall file with the Answer a copy of all portions of the state trial record that have been transcribed previously and that are relevant to a determination of the issues presented by the petition.

3. If Petitioner wishes to respond to the Answer, he shall do so by filing a Traverse with the Court and serving it on Respondent no later than **sixty-three (63) days** of his receipt of the Answer. Should Petitioner fail to do so, the petition will be deemed submitted and ready for decision **sixty-three (63) days** after the date Petitioner is served with Respondent's Answer.

4. It is Petitioner's responsibility to prosecute this case. Petitioner must keep the court informed of any change of address by filing a separate paper with the Clerk of the Court headed "NOTICE OF CHANGE OF ADDRESS," and comply with any orders of the Court within the time allowed or ask for an extension of that time. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). *See Martinez v. Johnson,* 104 F.3d 769, 772 (5th Cir. 1997) (Rule 41(b) applicable in habeas cases).

5. Petitioner is reminded that all communications with the Court, whether by way of formal legal motions or informal letters, must be served on Respondent by mailing a true copy of the document to Respondent's counsel.

6. Extensions of time are not favored, though reasonable extensions will be granted. However, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must

1

2   be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

3        7.    The Court DENIES his "Application to File Brief of Amicus Curiae of Physicians

4   and Bio-Scientists On Behalf of Petitioner Raymond Frank," which has been construed as a motion

5   for leave to file a brief of amicus curiae.  (Docket No. 2.)  The denial is without prejudice to

6   renewing the motion upon curing the deficiencies outlined above.

7        8.    This Order terminates Docket Nos. 2 and 6.

8

9       IT IS SO ORDERED.

10  DATED: _____September 11, 2012_____

                                 YVONNE GONZALEZ ROGERS

11                                   UNITED STATES DISTRICT COURT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California