United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAYMOND TIMOTHY FRANK,

          Petitioner,

    v.

FRANK X. CHAVEZ,

          Respondent.

Case No.: C 11-5204 YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY; DENYING MOTIONS FOR JUDICIAL NOTICE AND TO RESTORE DISMISSED CLAIMS**

(Dkt. Nos. 31, 32)

## INTRODUCTION

This matter is now before the Court for consideration of Raymond Timothy Frank's ("Petitioner") pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2003 conviction in Contra Costa County Superior Court. For the reasons set forth below, the petition is DENIED. In addition, no certificate of appealability will be issued. The motions for judicial notice and for to "revive" Claims 1-7 are DENIED.

## BACKGROUND

On October 15, 2003, Petitioner was convicted by a Contra Costa County jury of two counts of corporal injury of a child (Cal. Penal Code § 273d(a)) and one count of assault causing the death of a child under the age of eight (Cal. Penal Code § 273ab), with one "strike" and a prior serious felony conviction. (Clerk's Transcript ("CT") Vol. 2, Ans. Exh.

1   A, at 492-93.)  He was sentenced to a term of sixty years and four months to life in prison.

2   (*Id.* at 606-11.)  The judgment was affirmed by the California Court of Appeal on May 10,

3   2007.  (Ans. Exh. G.)  The California Supreme Court denied review on July 18, 2007.  (*Id.*)

4          On October 20, 2008, Petitioner filed a petition for a writ of habeas corpus in the

5   Contra Costa County Superior Court.  (Docket No. 14, Exh. C.)  The court issued a reasoned

6   opinion denying the petition on December 16, 2008.  (*Id.*, Exh. C at 1-4.)  Thereafter,

7   Petitioner filed state habeas petitions in the California Court of Appeal and the California

8   Supreme Court, both of which were denied.  (*Id.*, Exhs. D, E.)

9          Petitioner filed his first federal habeas petition on October 14, 2008.  (Case No. C 08-

10  04835 MMC (PR), Docket No. 1.)  The petition was dismissed without prejudice on

11  December 4, 2008, because Petitioner failed to pay the filing fee.  (*Id.*, Docket No. 5.)  The

12  Court subsequently declined to reopen the action because the claims presented in the petition

13  appeared to be unexhausted.  (*Id.*, Docket No. 8.)

14         On October 14, 2011, Petitioner filed the instant federal petition for a writ of habeas

15  corpus.  (Docket No. 1.)  Respondent moved to dismiss the petition as untimely and

16  procedurally barred.  After full briefing by the parties, the Court issued an order finding that

17  the petition "is barred as untimely under 28 U.S.C. § 2244(d)(1), unless [Petitioner] can show

18  that he is entitled to equitable tolling of the limitations period."  (Docket No. 13.)  Petitioner

19  argued in his opposition to the motion to dismiss that he was entitled to equitable tolling, but

20  the Court found that Respondent had not adequately addressed the argument.  Consequently,

21  the Court denied the motion to dismiss the petition as untimely, without prejudice to

22  Respondent's renewing the motion and addressing equitable tolling.  (*Id.*)  Additionally, the

23  Court declined to address at that time Respondent's alternative argument that Claims 1-7 of

24  the petition are procedurally barred.  (*Id.*)

25         Respondent filed a renewed motion to dismiss, arguing Claims 1-7 of the petition are

26  procedurally barred, but not renewing the argument that the petition is untimely or addressing

27  the matter of equitable tolling.  (Docket No. 14.)  The Court granted the motion and dismissed

28  Claims 1-7 as procedurally barred, in the process denying Petitioner's argument that the

2

1   procedural bar should be excused on the basis of "actual innocence." (Docket No. 19.)  The

2   Court also ordered Respondent to file an answer and to show cause why the petition should

3   not be granted on the basis of claims 8-11.  (*Id.*)

4         Respondent filed an Answer with a supporting memorandum and exhibits.  Petitioner

5   filed a Traverse.  Petitioner then filed a renewed motion for leave to file an amicus curiae

6   brief, and to "revive" Claims 1-7 on the basis of "actual innocence."  Petitioner also filed a

7   motion for judicial notice.

8   **II.   <u>Facts</u>**

9         The California Court of Appeal described the relevant facts as follows, referring to

10  Petitioner as "appellant":

> In January 2001, appellant and his girlfriend, Laurel Meiers, lived together with appellant's five children, of whom he had custody, and Meiers's son. Appellant's oldest children were Jane, who was 10 at that time, and John, who was 8.[1] Appellant's two middle children were toddlers. The youngest child, Michael, was 11 months old as of January 2001.
>
> After dinner on January 22, 2001, all of the children were sitting together in one of the bedrooms with appellant and Meiers, who was reading them a story. Appellant and Michael were on the top bunk of the bunk bed shared by John and Meiers's son. Michael began to cry, and appellant took him out of the room.
>
> Shortly thereafter, Meiers heard a bang, and the window in the room shook a little. Within half an hour, Meiers heard appellant's voice calling her into the master bedroom. When she got there, Michael was lying on the floor, and appellant was bending over him. Appellant told Meiers that Michael had stopped breathing. Appellant began giving Michael mouth-to-mouth resuscitation. He told Meiers not to call 911, but she did so anyway.
>
> The ambulance arrived at 11:27 p.m., and Michael was taken to the hospital, barely breathing and with a very low pulse. Examination at the hospital revealed that he had both recent and older contusions on his arms and shoulders; subdural hematomas, also both recent and older, which indicated bleeding in the brain;

---

[1]The pseudonyms "Jane" and "John Doe II" were used at trial to refer to the two oldest children. We will refer to these children as Jane and John, as the parties have done in their briefs on appeal. Appellant's youngest child was originally referred to in the indictment as "John Doe I," but at trial, he was called by his real name, Michael, and we will follow suit.

blood behind his tympanic membranes in his ears; and retinal hemorrhaging in his eyes. Because these injuries are typically signs that a baby has been violently shaken, the doctors questioned appellant at the hospital. Appellant appeared concerned for the baby, but was reluctant to divulge information about his household, and suggested several different explanations for his injuries that the doctor did not believe were consistent with Michael's condition.

Because child abuse was suspected, a police officer was sent to the hospital to take photographs of Michael. Appellant asked the officer if the photographs were necessary, asked to see them on the display screen of the digital camera, and commented that the photographs made things seem worse than they actually were.

Michael was transferred to the pediatric intensive care unit at a hospital in San Francisco, where further examination confirmed that he had bruises of varying ages; severe retinal hemorrhages; swelling on his brain; and subdural hematomas, also of varying ages. Eventually, his condition stabilized to the extent that he could be discharged to a foster home operated by a pediatric nurse. He remained in a vegetative state and dependent upon a feeding tube, however, and ultimately died on July 24, 2001.

An autopsy revealed that Michael had subdural hematomas on both sides of his brain, and both retinal and optic nerve sheath hemorrhages in his eyes. Based on the autopsy findings, as well as Michael's medical records and history, the pathologist agreed with the treating physicians and the prosecution's expert that Michael's death was definitely caused by "blunt force head injury," commonly known as "shaken baby syndrome."

After appellant was arrested on the night Michael was taken to the hospital, the older children were taken into custody by Child Protective Services. Jane and John were observed to have bruises on their arms and legs, and swelling on their faces. Both children testified at trial, and appellant admitted, that he disciplined them by hitting them with a belt.[2]  Meiers confirmed in her trial testimony that on several occasions during the time she lived with appellant, she had seen and heard appellant hitting John and Jane in order to discipline them, and that she had seen bruises on John.  Meiers testified that she had tried to intervene, but that appellant had told her that they were his children and that she was not to interfere with his disciplining them.

---

[2] The two oldest children's trial testimony was inconsistent with their pretrial statements on some matters of detail, but there was overwhelming evidence that appellant disciplined them by beating them with a belt, and that they both had bruises at the time appellant was arrested. Appellant does not contend otherwise on this appeal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Appellant was charged with two counts (one count each as to Jane and John) of inflicting corporal injury on a child (the corporal injury counts (Pen.Code, § 273d, subd. (a)[]), and one count of violating section 273ab (the section 273ab count) as to Michael. After a jury trial, appellant was convicted of all three counts, although a great bodily injury allegation as to one of the corporal injury counts was found not true. Appellant was sentenced to an aggregate term of 60 years 4 months to life in prison. This timely appeal ensued.

*People v. Frank*, 2007 WL 13662490, *1-2 (Cal. Ct. App. 2007) (*see also* Ans. Exh. G) (footnotes in original)).

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 384–86 (2000), while the second prong applies to decisions based on factual determinations.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  *Williams*, 529 U.S. at 405–06.  "Under the 'unreasonable application' clause, a federal habeas court may

5

United States District Court
Northern District of California

1    grant the writ if the state court identifies the correct governing legal principle from [the

2    Supreme] Court's decisions but unreasonably applies that principle to the facts of the

3    prisoner's case." *Id.* at 413. Section 2254(d)(1) restricts the source of clearly established law

4    to the Supreme Court's jurisprudence. *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

5        Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

6    will not be overturned on factual grounds unless objectively unreasonable in light of the

7    evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340. Where

8    constitutional error is found, habeas relief is warranted only if the error at issue had a

9    "substantial and injurious effect on the verdict." *Penry v. Johnson*, 532 U.S. 782, 796 (2001)

10    (citation omitted).

11        In determining whether the state court's decision is contrary to or involved an

12    unreasonable application of clearly established federal law, or is based on an unreasonable

13    determination of the facts, a federal court looks to the decision of the highest state court to

14    address the merits of a petitioner's claims in a reasoned decision. *LaJoie v. Thompson*, 217

15    F.3d 663, 669 n.7 (9th Cir. 2000). The four remaining claims, Claims 8-11, were raised and

16    denied on direct appeal. The California Court of Appeal's opinion affirming the judgment is

17    the highest reasoned state court decision denying the claims because the California Supreme

18    Court denied them summarily.

19                                     **DISCUSSION**

20        The four remaining claims, Claims 8-11, assert: (1) the trial court violated his right to

21    due process by admitting evidence of his objections to a police search of his home; (2) the

22    trial court should have given a unanimity instruction on Count One, for assault causing death;

23    (3) the discharge of Juror No. 6 violated his state constitutional right to a unanimous jury

24    verdict, in which he has a liberty interest protected by the federal constitutional right to due

25    process; and (4) his sentence of 25 years to life for assault causing death constitutes cruel and

26    unusual punishment, in violation of the Eighth Amendment.

27

28

1

## 1.    **Admission of Evidence**

2

3 Petitioner claims that the trial court violated his constitutional rights by admitting

4 evidence that he objected to the police searching his home as evidence of his consciousness of

5 guilt.  Petitioner's girlfriend Meiers consented to a search of the family home on the night

6 Michael was injured, while Petitioner was at the hospital.  When Petitioner came home, he

7 objected to the search and the presence of police officers in his home.  At trial, the court

8 allowed the officers to testify to Petitioner's objections.  Petitioner argues that the trial court

9 should not have admitted the evidence because he was asserting his constitutional rights.

10 Allowing the evidence to show his consciousness of his guilt violates both his Fourth

Amendment rights and his due process right to a fundamentally fair trial.[3]

11 The California Court of Appeal agreed that admission of the evidence was error but

12 found the error harmless.  *See People v.Frank*, 2007 WL 13662490 at *3-5.  In finding error,

13 the California Court of Appeal relied on state court precedent.  *Id.* at *3.  Under AEDPA,

14 federal habeas relief is only available on the basis of "clearly established Federal law, as

15 determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d); *see Mitchell v.*

16 *Esparza*, 540 U.S. 12, 17 (2003) (Section 2254(d)(1) restricts the source of clearly established

17 law to the Supreme Court's jurisprudence).  "Circuit precedent does not constitute 'clearly

18 established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1)" and it

19 "therefore cannot form the basis for habeas relief under AEDPA."  *Parker v. Matthews*, 132 S.

20 Ct 2148, 2155 (2012).

21 None of the authority relied upon by the Court of Appeal to find error, nor any

22 authority cited by Petitioner, comes from the United States Supreme Court.  While the

23 Supreme Court has held that a defendant's exercise of his Fifth Amendment right to remain

24 silent may not be admitted to show evidence of guilt, *Griffin v. California*, 380 U.S. 609

25 (1965), and certain federal courts of appeal have extended that holding to a defendant's

26

27 ───────────────

[3] Petitioner also argues that the evidence was inadmissible under state law as more prejudicial
28 than probative. *See* Cal. Evid. Code § 352.  This argument need not be addressed here because federal
habeas relief is only available based on a violation of federal law.  *See* 28 U.S.C. § 2254.

United States District Court
Northern District of California

assertion of his Fourth Amendment rights, *see*, *e.g., United States v. Taxe*, 540 F.2d 961, 969 (9th Cir. 1976), Petitioner cites no decisions of the Supreme Court, and this Court is aware of none, that have extended *Griffin* to the Fourth Amendment.  Therefore, the admission of the evidence of Petitioner's objections to the search does not contravene "clearly established Federal law as determined by the Supreme Court," and under AEDPA this claim does not warrant habeas relief.

Federal habeas relief is not warranted for a second reason: even if the trial court erred in admitting the evidence, there was no prejudice.  When an evidentiary error is of constitutional dimension, federal habeas relief is only allowed if the error was not harmless under the standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001).  This standard requires a showing that the error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637 (citations and internal quotations omitted).  In finding the error harmless, the California Court of Appeal reasoned as follows:

> As to the two charges involving the older children, this issue is easy to resolve. The evidence introduced at trial made it abundantly clear that appellant "disciplined" his two oldest children by hitting them with a belt hard enough to bruise them. In his trial testimony, appellant himself admitted spanking John and Jane with a belt. Thus, the error in admitting the evidence of respondent's objections to the search of his home was harmless beyond a reasonable doubt as to these charges. Appellant does not argue otherwise on this appeal.

> Even as to the section 273ab count, the evidence of appellant's guilt was extremely strong. Appellant characterizes the forensic medical evidence regarding the cause of Michael's death as equivocal, but our review of the record belies this contention. The pediatric intensive care doctor who treated Michael in San Francisco opined at trial that "it was very likely that shaken baby syndrome or some form of nonaccidental trauma" had caused Michael's injuries. The ophthalmologists who examined Michael said that his retinal hemorrhages were "among the worst that they've ever seen in their careers." The prosecution's medical expert on child abuse opined that Michael's injuries were unquestionably the result of an abusive head injury, and could not have been caused by his falling off the bed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Appellant also contends that the evidence that he was the one who inflicted Michael's injuries was less than overwhelming, pointing to the fact that aspects of Meiers's trial testimony were inconsistent with her pretrial statements to the police, to appellant's mother, and to her friends. Meiers plausibly explained the inconsistencies at trial, however, and insisted that her trial testimony, which was consistent with the forensic evidence, was the true story. The jury's verdict makes clear that it chose to believe her on that point. Our review of the record leads us to conclude beyond a reasonable doubt that the jury's credibility determination in that regard would not have been different if the evidence of appellant's objections to the search of his home had been excluded.

Finally, besides the testimony about appellant's objections to the search of his home, there was other evidence of his consciousness of guilt, which appellant does not contend was admitted in error. First, Meiers testified at trial that when appellant called her into the master bedroom because Michael had stopped breathing, he told her not to call 911. Second, appellant objected to the police photographing Michael's bruises in the emergency room. Third, appellant suggested to the treating doctor several different explanations as to how Michael could have incurred his injuries, none of which were consistent with the severity of Michael's condition.

Finally, Meiers testified that on the day after Michael was taken to the hospital, appellant called her and suggested that his injuries might have resulted from a car accident that had occurred during a family trip, but Meiers did not find this explanation credible because the family had taken two cars, and Michael had been riding in the car that was not involved in the accident. Appellant also asked Meiers if she remembered Michael's having fallen off the bed in the master bedroom, an incident of which she remembered nothing.

Given this evidence of appellant's defensive efforts, the testimony about his objections to the police search of the home was cumulative, at best, on the issue of consciousness of guilt. For all of the foregoing reasons, we find its admission to have been harmless beyond a reasonable doubt.

*People v. Frank*, 2007 WL 13662490 at *4-5.

The California applied the harmlessness standard for direct review from *Chapman v. California*, 386 U.S. 18, 24 (1967), under which it is more difficult to find harmlessness than under the harmless error standard used on federal habeas review. *See Brecht*, 507 U.S. at 637-38. For the same reasons that the California Court of Appeal found the error harmless under *Chapman*, namely the persuasive forensic evidence and the other evidence of Petitioner's

United States District Court
Northern District of California

consciousness of guilt, this Court finds that even if admitting his objections to the search were erroneous under AEDPA, the error would be harmless under *Brecht* because the evidence did not have a substantial and injurious effect on the jury's verdict.  Accordingly, habeas relief must be denied on this claim.

**2.**   **Unanimity Instruction**

Petitioner claims that the trial court erred in failing to give a unanimity instruction on Count One, the charge for assault leading to the death of a child under California Penal Code § 273ab.  Petitioner alleges no constitutional violation, but the claim is liberally construed to assert a violation of his right to due process.  *See generally Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (state trial court's failure or refusal to give instruction may deprive defendant of fair trial guaranteed by due process).

The jury was instructed, pursuant to CALJIC No. 17.01, that there was evidence of more than one act upon which a conviction on the two counts of abusing his children could be based, and that "all jurors must agree" on the act or acts that Petitioner had committed.  Petitioner argues that such an instruction should also have been given on Count One because there was evidence that Petitioner had shaken or assaulted Michael more than once and the jury had to be told that it needed to agree on which assault occurred.

The California Court of Appeal found no error, based upon the following reasoning:

> The crime prohibited by section 273ab is defined as follows: "Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, *resulting in the child's death*, shall be punished by imprisonment in the state prison for 25 years to life." (§ 273ab, italics added.)  The italicized language requires that in order to convict a defendant under section 273ab, the prosecution must prove not only that the defendant assaulted the child with the requisite degree of force, but also that the charged assault *caused the child's death*. (*See People v. Norman* (2003) 109 Cal.App.4th 221, 231 ["the actual *death* of a child under age eight is an element of the crime" under section 273ab (italics in original) ]; *People v. Preller* (1997) 54 Cal.App.4th 93, 96-98 [section 273ab requires degree of force that reasonable person would know was likely to result in great bodily injury, and requires that

10

death of child result from such force]; *see also* CALJIC No. 9.36.5 [elements of section 273ab include death of child resulting from assault].)

In the present case, the evidence showed that the only assault on Michael by appellant that could reasonably be found to have caused Michael's death was the one that immediately preceded Michael's hospitalization.[4]  Thus, although there was evidence of multiple assaults, only the ultimate one was, or for that matter could have been, prosecuted as a violation of section 273ab.  Accordingly, this case involved only "one discrete crime," rather than multiple crimes, and no unanimity instruction was required. (*Cf. People v. Russo* (2001) 25 Cal.4th 1124, 1132-1133 [where only one conspiracy is charged, there is only one crime, and jury need not agree unanimously as to the identity of the overt act supporting conviction].)

The cases relied on by appellant are not to the contrary.[5]  In *People v. Dellinger* (1984) 163 Cal.App.3d 284, 289, the defendant was charged with first degree murder of a child (rather than with a violation of section 273ab), and the evidence showed that the victim's death had been caused either by the ingestion of cocaine, or by blunt force trauma to the head, or both. The court held that a unanimity instruction was required in order to ensure that the jurors agreed unanimously on what act the defendant had committed that caused the child's

---

[4] The medical evidence did indicate that Michael had injuries that appeared to have been the result of abuse predating his admission to the emergency room on January 22, 2001. In addition, Meiers testified at trial that on January 21, 2001, she entered the baby's room after hearing banging noises, and saw appellant holding Michael up against a wall, with his hand around the baby's neck. However, the pathologist who autopsied Michael testified that although "some people would say that you can deliver lethal head trauma to an infant and there are no symptoms at all, and that child carries on normally for hours, if not days, ... and then all of a sudden dies," he personally "ha[d] a hard time conceptually coming to grips with a lethally injured child who acts normal for perhaps a prolonged period of time." Moreover, Meiers testified that despite the assault she witnessed on January 21, 2001, Michael's behavior on the following day appeared normal, except for sleepiness and lack of appetite that she attributed to his having had a cold from which he was still recovering. Thus, the theory that Michael was killed by the assault on January 21, 2001, rather than by the one immediately preceding his hospitalization, did not have sufficient support in the evidence to require a unanimity instruction. Alternatively, to the extent that there was evidence tending to indicate that Michael's death was caused by the cumulative effect of multiple assaults, such evidence would show a continuous course of conduct on appellant's part, and thus also would not require a unanimity instruction. (*See People v. Rae, supra*, 102 Cal.App.4th at p. 122; *People v. Ewing* (1977) 72 Cal.App.3d 714, 716-717.)

[5] In addition to the cases discussed in text, appellant also relies on *People v. Ramirez* (1987) 189 Cal.App.3d 603, 613-615. This case is relevant to appellant's argument, however, only insofar as it indicates that a jury must unanimously agree on an overt act in a conspiracy case. On this point, *People v. Ramirez* appears to have been overruled by *People v. Russo, supra*, 25 Cal.4th at p. 1134.

death. (*Id*. at pp. 300-302.) In *People v. Espinoza* (1983) 140 Cal.App.3d 564, the prosecutor argued at trial that the defendant could be convicted of assault with a deadly weapon based either on the defendant's own use of a knife, or on his confederate's use of a rifle during the same robbery. (*Id*. at p. 567.) The appellate court held that a unanimity instruction should have been given, because "the physical acts involving the knife were not identical to those with the gun," so the jury could have found the defendant guilty without agreeing as to what act or acts constituted assault with a deadly weapon.  (*Id*. at p. 569.)

Both of these cases are distinguishable, because here, there was no evidence that Michael's death was caused by anything other than blunt force trauma to his head. Thus, the only issues were whether appellant had inflicted that trauma, and, in so doing, had used the degree of force required by section 273ab. Appellant does not argue that the instructions given failed to require unanimity on those two issues.

*People v. Frank*, 2007 WL 13662490 at *6-7 (footnotes in original).

The California Court of Appeal's interpretation of Section 273ab that it requires a funding that that the use of force actually caused the death of the child is an interpretation of state law that is binding on this Court conducting federal habeas review.  *Hicks v. Feiock*, 485 U.S. 624, 629-30 n. 3 (1988).  The Court of Appeal reasonably found that the evidence showed that Michael's death was caused by an assault that occurred immediately prior to his hospitalization, either because it was sufficient on its own to kill him or as cumulative of earlier assaults.  In either case, there were not multiple different acts that could have been the basis for the conviction under Section 273ab under the California Court of Appeal's binding construction of California law, and therefore there was no need for a unanimity instruction. The California Court of Appeal's denial of this claim was therefore neither contrary to nor an unreasonable application of federal law.

**3.    Discharge of Juror**

Petitioner claims that the discharge of Juror No. 6 for cause during deliberations violated his right to a unanimous jury verdict under the California constitution, a right constitutes a liberty interest protected by the federal constitutional right to due process.  He correctly concedes that there is no federal constitutional right, either under the Sixth Amendment right to a jury or the due process right to a fundamentally fair trial, to a

12

1   unanimous verdict for defendants in state courts.  *See Apodaca v. Oregon*, 406 U.S. 404, 410-

2   12 (1972) (rejecting 6th Amendment right to jury trial challenge to 10-2 state jury verdict);

3   *Johnson v. Louisiana*, 406 U.S. 356, 359-63 (1972) (rejecting due process challenge to 9-3

4   state jury verdict).

5          Petitioner cites no Supreme Court authority, or indeed any decisions by the federal

6   circuit courts, and this Court is aware of none, that a defendant has a liberty interest protected

7   by the federal right to due process in a unanimous verdict.  The absence of such authority

8   means that the state courts' rejection of his claim cannot be contrary to or an unreasonable

9   application of "clearly established federal law, as determined by the Supreme Court," and that

10  he cannot obtain habeas relief under AEDPA.

11         Even if Petitioner had a liberty interest protected by due process in the state

12  constitutional right to a unanimous jury verdict, moreover, the record does not support a

13  finding that this right was violated.  As framed by the California Court of Appeal, California's

14  right to a unanimous verdict is not violated if Juror No. 6 was discharged because of a

15  "demonstrable reality" of good cause, and not because she doubted the sufficiency of the

16  prosecution's evidence that petitioner was guilty.  *People v. Frank*, 2007 WL 13662490 at *8.

17  Here, the trial court received evidence that the discharged juror had indicated to another juror

18  during deliberations that she would not render a guilty verdict on certain charges because she

19  would not "send a black man to prison for 25 years" and because Petitioner had already lost a

20  child.  *Id*. at *7-8; (Reporter's Transcript ("RT"), Ans. Exh. B, at 2259-70).  The California

21  Court of Appeal reasonably concluded that the trial court could reasonably find this evidence

22  credible, and then reasonably found based on such evidence that:

23
24          Juror No. 6 was allowing her bias against the three strikes law, and against the
            criminal justice system in general, to infect her deliberations. It therefore
25          constituted good cause to dismiss her for refusing to deliberate in accordance
            with the court's instructions. Under California law, this result is not affected by
26          the fact that Juror No. 6 appears to have been a lone holdout for acquittal on the
            section 273ab count. (*People v. Cleveland*, *supra*, 25 Cal.4th at p. 484.) We
27          therefore find no abuse of discretion in the trial court's discharge of Juror No. 6.
28

*People v. Frank*, 2007 WL 13662490 at *8.  Even if Petitioner had a federally-protected liberty interest in his state constitutional right to a unanimous verdict, the state courts' reasonable conclusion that the record does not show a violation of this right precludes federal habeas relief on this claim.

**4.**   **Sentence**

Petitioner claims that his sentence of twenty-five-years-to-life for assaulting his child and causing his death under California Penal Code § 273ab is cruel and unusual punishment prohibited by the Eighth Amendment.  For the purposes of AEDPA, it is clearly established that "[a] gross proportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 24-25 (2003).  "[I]n applying gross disproportionality principle courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed." *Norris v. Morgan*, 622 F.3d 1276, 1287 (9th Cir. 2010).  The court "considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive."   *Graham v. Florida*, 130 S. Ct. 2011, 2021(2010).

The California Court of Appeal denied this claim based on the following reasoning:

We do not believe that it "'shocks the conscience and offends fundamental notions of human dignity'" (*People v. Dillon* (1983) 34 Cal.3d 441, 478) to impose a sentence of 25 years to life in prison on a person who assaults a small child in his or her care or custody with a degree of force that a reasonable person would know was likely to cause great bodily injury, and who ends up killing the child as a result. Such conduct evinces profound and callous disregard for the life of an exceptionally vulnerable victim, and entails a level of criminal culpability that may reasonably be viewed as exceeding that associated with involuntary manslaughter.

As for appellant's particular circumstances, his trial testimony showed that he saw himself as perfectly within his rights in "disciplining" his older children by striking them repeatedly with a belt. The forensic evidence showed that the assault which ultimately caused Michael's death was only the last in a series of

14

incidents resulting in retinal hemorrhaging and subdural hematomas, indicating that Michael had been violently shaken on more than one occasion. Appellant had two prior convictions for resisting arrest, and one for assault with intent to commit rape, which resulted in the doubling of the term that would otherwise have been imposed for his section 273ab conviction. Under these circumstances, we are not persuaded that the sentence appellant received constituted cruel and unusual punishment.

*People v. Frank*, 2007 WL 13662490 at *9.

The United States Supreme Court has held that a sentence of fifty years to life for a conviction for two petty thefts where the offender had three prior burglary convictions was not an unreasonable application of the gross disproportionality principle. *Lockyer*, 538 U.S. at 73-74. The Supreme Court has also upheld a sentence of twenty-five years to life for felony grand theft of three golf clubs, with three prior convictions for burglary and robbery. *Ewing*, 538 U.S. at 29-30. The sentences in *Lockyer* and *Ewing* were as long or longer than the twenty-five-years-to-life sentence for violating Section 273ab, and yet the offenses were non-violent property crimes that are much less serious than the crime of assaulting and killing an 11-month old baby. In addition, Petitioner's prior conviction for assault with intent to commit rape is more serious and violent than the non-violent prior convictions of the defendants in *Lockyer* and *Ewing*. If the similar and longer sentences in *Lockyer* and *Ewing* are not grossly disproportionate to the less serious offenses, and do not violate the Eighth Amendment, then the state court's decision here to uphold Petitioner's sentence was neither contrary to nor an unreasonable application of federal law. Accordingly, habeas relief is not warranted on this claim.

5.   **Motions for Judicial Notice and to "Revive" Claims 1-7**

After filing his Traverse, Petitioner filed two motions: one for judicial notice and one to "revive" Claims 1-7, which were dismissed on procedural default grounds.

Petitioner requests judicial notice of two documents: (1) a declaration by Dr. John Plunkett offering his opinion that Michael did not die as a result of "Shaken Baby Syndrome" (Dkt. No. 33, Exh. G); and (2) a document entitled "Brief of Amicus Curiae of Physicians and Bio-Scientists On Behalf of Petitioner Raymond Frank" (Dkt. No. 2). These are not judicially

noticeable documents.  A judge may take judicial notice of facts not subject to reasonable dispute and either generally known in the community of capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned.  *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles,* 250 F.3d 668, 688-90 (9th Cir. 1002).  The documents are not "facts," and the opinions, scientific research, facts and arguments set forth therein are highly disputed and are far from generally known or capable of accurate and ready determination.  (*See* Dkt. No. 19.)  Accordingly, the request for judicial notice (Dkt. No. 32) will not be granted.  It appears, however, that Petitioner may be confusing judicial notice with judicial consideration.  While the Court cannot take judicial notice of the matters discussed in the documents, the Court can and has considered these documents in deciding his other motion, to restore the dismissed Claims 1-7.

Petitioner moves to renew his argument raised in opposition to the motions to dismiss that the procedural default of Claims 1-7 should be excused on the grounds of "actual innocence," and he seeks to support this argument with Dr. Plunkett's declaration and the aforementioned amicus brief.  The Court rejected Petitioner's "actual innocence" argument in the Order Granting Respondent's Renewed Motion to Dismiss.  (Dkt. No. 19.)  As explained in that Order, procedural default will be excused on the grounds of "actual innocence" if a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). The required evidence must create a colorable claim of actual innocence, as opposed to legal innocence as a result of legal error.  *Id*. at 321.  It is not enough to show that a reasonable doubt exists in the light of new evidence, instead, a petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him."  *Id*. at 329.  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id*. at 324.  This does not mean a petitioner need always affirmatively show physical evidence that he did not commit the crime with which he is charged. *Gandarela v. Johnson*, 286 F.3d

16

1080, 1086 (9th Cir. 2002). Rather, a petitioner may promulgate evidence "that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* (quoting Schlup, 513 U.S. at 327). The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors. *Schlup*, 513 U.S. at 329.

The amicus brief along with his petition; the brief was prepared and filed by attorney Lisa A. Rasmussen in a different criminal proceeding over a decade ago. (Dkt. No. 2.) In connection with Respondent's first motion to dismiss, Rasmussen confirmed to Respondent's attorney that she was not representing Petitioner, nor had she filed an amicus brief in the instant case or "authorized or endorsed such use" of her amicus brief, but rather had filed it in approximately 2000 in *People v. Basuta*, 94 Cal. App. 4th 370 (2001), a direct appeal involving "shaken baby syndrome." (Reply to MTD (Dkt. No. 12), Exh. 1, Decl. Gregory Ott ("Ott Decl.") ¶¶ 3- 6.) The Court rejected consideration of the amicus brief because it was prepared for an unrelated case. (Dkt. No. 13.) In his opposition to Respondent's renewed motion to dismiss, Petitioner renewed both his claim of actual innocence and his motion for leave to file Rasmussen's amicus brief in support of that claim, this time submitting evidence that Rasmussen's permitted him to use the brief. The Court reviewed the amicus brief and the parties' arguments, and rejected Petitioner's assertion of actual innocence for two reasons. First, the arguments made in the amicus brief refuting the science behind "shaken baby syndrome" were not addressed to the evidence in Petitioner's case. Secondly, Petitioner had not presented evidence (such as affidavits) from potential expert witnesses who reviewed his case and would be willing to testify on his behalf.

Petitioner now submits the declaration of Dr. John Plunkett, a physician licensed in Minnesota and Wisconsin, stating that he reviewed the photos of Petitioner's children in 2005, and that in his opinion John and Jane had been struck with a belt, and that Michael did not die from "shaken baby syndrome." (Dkt. No. 33, Exh. G, Decl. John Plunkett ¶¶ 1-5.) Dr.

Plunkett further opines that the principles in Rasmussen's amicus brief apply to Petitioner's case. (*Id.* ¶¶ 6-8.) This does not meet the standard of actual innocence. Had Dr. Plunkett's opinions, including his endorsement of the principles in Rasmussen's brief, been presented at trial, the jury would have been presented with dueling expert opinions between Dr. Plunkett and the principles cited in the amicus brief on the one hand, and on the other hand the opinions of the pathologist, Michael's treating physicians and the prosecution's experts that Michael's death was caused by shaken baby syndrome or blunt force head injury. A reasonable juror could certainly find persuasive the opinions of the pathologist, treating physicians, and prosecution's expert persuasive, reject the contrary opinions of Dr. Plunkett and the amicus brief, and find beyond a reasonable doubt that Petitioner assaulted Michael and caused his death. In addition, this was not solely a shaken baby case: Michael's body showed ample external trauma and his treating physicians and the prosecution's expert's opinions allowed that his head injuries were caused by shaking or other nonaccidental and abusive trauma. (*See* RT at 1101, 1108, 1111, 1183-84, 1197, 1222, 1225, 1506, 1664.) Therefore, even if the new evidence persuaded the jury that Michael did not die from shaking, a reasonable juror could have still found beyond a reasonable doubt that Michael died from other trauma and abuse inflicted by Petitioner.

As a result, Dr. Plunkett's declaration and the amicus brief do not meet the high burden of showing that, had this evidence been presented at trial, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Consequently, the Court finds that even considering Dr. Plunkett's declaration and the miscarriage of justice exception on the grounds of actual innocence does not apply to Petitioner's procedural default of Claims 1-7 of the instant petition. Accordingly, the motion to "revive" such claims will also be denied.

### CONCLUSION

For the foregoing reasons, the Court DENIES the petition for a writ of habeas corpus, and the motions for judicial notice and to "revive" Claims 1-7 are DENIED. A certificate of appealability will not issue. Reasonable jurists would not find the Court's assessment of the

United States District Court
Northern District of California

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:   August 29, 2014

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California